### LEM WEBB v. STATE.

No. 2303.　Decided February 26, 1913.

**1.—Theft of Cattle—Evidence.**

Upon trial of theft of cattle, there was no error in permitting the State on cross-examination of defendant's witness to show that the head of cattle he testified about was the one which defendant claimed to have raised, etc.

**2.—Same—Charge of Court—Recent Possession.**

Where the charge of the court on explanation of recent possession instructed the jury to pass upon such explanation directly as was given by defendant, instead of giving the other form of reasonable explanation, there was no error.

**3.—Same Misconduct of Jury—Separation of Jury.**

Where, upon trial of theft of cattle, the separation of one of the jurors from the other eleven jurors was not such as could have injured the defendant's rights in any way, there was no reversible error.

**4.—Same—Evidence—Recalling Witness.**

Upon trial of theft of cattle, there was no error in permitting the State to recall the main State's witness after the testimony had been closed and defendant's argument had been closed, and permit him in the presence of the jury to write his name on a piece of paper for the purpose of comparing it with his alleged signature to a tax rendition, and permit same to be considered by the jury; the court offering ample opportunity for cross-examination and additional argument; no abuse of the court's discretion having been shown.

**5.—Same—Permitting Jury to Carry Papers with Them.**

Upon trial of theft of cattle, there was no error in permitting the jury to carry with them certain papers in evidence when they retired to consider their verdict; besides, the bill of exceptions did not point out any injury to defendant.

Appeal from the District Court of Smith. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The following facts taken from the brief of the Assistant Attorney-

General are substantially correct: The evidence of the State in effect shows that one Gatlin was the owner of said yearling; that he saw appellant looking for cattle in his neighborhood just prior to the time he missed his yearling from the range; that shortly thereafter he made frequent inquiry of appellant if he had seen his yearling; that appellant replied at all times that he had not seen the yearling; that later Gatlin found his yearling in the pasture of one Bell who told him that he got the yearling from appellant. He then sent appellant word to come over and see about the yearling; that appellant came to see him and stated to Gatlin that he did not know · that it was Gatlin's yearling until two or three days after he had sold it to Bell; that he thought it was one of his own yearlings, which was very much, or exactly, like Gatlin's yearling, and he then asked Gatlin what it would take to satisfy him. Bell testified to appellant's having sold the yearling and that appellant told him that it was an estray which came to his house when a calf. There was other testimony along this line in behalf of the State. Appellant introduced testimony positively that the yearling sold to Bell was his property and was raised by him. He placed upon the stand his father, Wm. Webb, who testified in his behalf to the effect that he had seen a yearling at appellant's house just like the yearling sold by appellant to Bell after the sale to Bell. This witness was cross-examined by the state and was required to testify over objections of appellant that he had bought a yearling from another party similar to the two yearlings above mentioned, for the purpose, as contended by the State, to show that the witness, Wm. Bell, was undertaking to make a false defense for his son.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This is a cattle theft conviction. The first bill of exceptions recites that the State introduced the following testimony: William Webb on cross-examination by the State, testified over the objection of the defendant, that, "during last fall, after the date alleged in the indictment, and after the indictment had been filed in the court, he bought a yearling, about the same size and color of the yearling alleged to have been stolen, from Henry Stokely, paying him $20 for it, bringing it over to his farm." The objections urged were that it was not shown that the yearling, defendant claims to have now, was the yearling that William Webb bought from Henry Stokely, nor had the State connected defendant with this transaction. The court qualified it by stating: "The State sought to show and there was evidence tending to show that the yearling bought by Wm. Webb, was the yearling the defendant claimed to have raised and that he wanted prosecuting witness to look at."

By reference to the statement of facts it might be discovered that the yearling was bought after the alleged theft and after indictment found, and the evidence might show there was another yearling of the same kind thereafter in possession of the parties. We do not think there is any merit in the bill as it is presented.

The next bill recites that defendant presented the following instruction which was refused: "You are charged that if you believe from the evidence that the one head of cattle described in the indictment had been stolen from Jack Gatlin, and that recently thereafter, the defendant was found in possession thereof, and when his possession was first questioned, he made an explanation of how he came by it and that you believe that such explanation is reasonable and probably true, and accounted for the defendant's possession in a manner consistent with his innocence, then you will consider such explanation as true and acquit the defendant." The court sufficiently charged this phase of the law and covered all that character of evidence, when he instructed the jury has follows: "If you shall find that the one head of cattle sold by defendant to the witness, Louis Bell, was not the property of Jack Gatlin, or if you have a reasonable doubt as to whether the one head of cattle was owned by Jack Gatlin, you will acquit the defendant. If you shall find that the one head of cattle sold to Bell was the property of Jack Gatlin, yet if you shall find that when defendant took possession of the one head of cattle, he did so under the honest belief that it was his yearling or if you have a reasonable doubt as to whether he so believed you will acquit the defendant." The theory of the defendant, or rather his statement when charged with the theft of the animal,—and the evidence on the trial was to the same effect,—was that at the time he got the animal he thought it was his and got it through a mistake, and that two or three days afterward he discovered that it belonged to Gatlin. This presents the defendant's theory of it, and, we think, sufficiently. In fact, this court, in a number of cases, has suggested it to be a better and safer rule to charge the jury directly on whatever account is given by the defendant, in cases of this sort, instead of giving the other form of reasonable explanation,—that is, if the theory of the defendant was that he bought the animal to charge the jury directly that if they should so find, or had a reasonable doubt to acquit him, or if he took it through mistake and they should so find or have a reasonable doubt of that fact to acquit. Or if he took it under any theory of honesty, whatever that theory was, to so charge the jury directly and also give the defendant the benefit of the resaonable doubt in connection with it. We think the court's charge properly submitted the matter.

Another bill of exceptions recites that after the jury heard the evidence, argument of counsel and received the charge of the court, they retired to consider of their verdict, and later and before a verdict had been agreed upon, eleven members of the jury appeared in

the Distirct Court room where court was in session, but one of the jurors was not present when the eleven other members made their appearance; that the eleven members were in the courtroom five or ten minutes before his absence was known, and that after a search the deputy found the juror in the third story of the courthouse, above the courtroom, in a separate room from the said courtroom, and the juror was asleep, and by this means the jury were permitted to separate, there being people passing between the said jury and the absent member. This is signed with the statement by the trial judge that the jury made known to the court, through the deputy sheriff who was guarding them, that they wanted a portion of the testimony reproduced, whereupon the court decided that they be brought into open court and after eleven had come into the room, while the stenographer was looking for that portion of the testimony desired, the sheriff called the court's attention to the fact that only eleven jurors were present; that this was only a short time after the jury came in, from three to five minutes; that the sheriff was at once sent to the jury room after the other juror who was in the jury room; no one else was in the room; that the jury room in the new courthouse at Tyler is just over to the rear of the Judge's stand, extended above by a stairway ascending at the rear of the Judge's stand; that no one was with the eleven jurors but the sheriff and no one was with the juror left in the room, and no one spoke to either the eleven or the one, during the brief period. As this bill is explained by the Judge by his qualification,—and the bill was so accepted,—there is no error in the alleged separation.

Another bill recites that Jack Catlin was permitted to be recalled by the State over appellant's objection on the morning of September 25, 1912, after the testimony had been closed on the night of September 24, 1912, and after all of the witnesses had been excused, and after the State had made its opening argument and the defendant had closed his argument, and the defendant's leading counsel, who was most familiar with the facts in said case, had been called out of town, and permitted in the presence of the jury to write his name on a piece of paper for the purpose of comparing it with his alleged signature to a tax rendition, and introduced the signature thus written in evidence; and which testimony was objected to because the testimony had been closed on the night before, and all the witnesses had been excused, and that it would result in reopening the case and bringing the other witnesses back to testify regarding the said signature, because the State had made its opening argument and the defendant had closed his argument, and the leading counsel, who had conducted the examination of witnesses, having made the closing argument for defendant, had left town and would not have opportunity to cross-examine said witness. The court qualifies this bill as follows: "Deft, was represented in court by the firm of Hanson & Butler and R. H. C. Butler, the later being counsel referred to as having left town for his home

some ten miles in the country. When the State introduced this evidence, the court offered counsel for defendant there in court, an opportunity to rebut same and make another argument to the jury before the district attorney closed the argument for the State.'' The statute provides that evidence may be introduced, where it is necessary to the administration of the law, at any time before the argument is closed. The objections here do not go to the testimony itself, but because of the fact that the arguments, except the closing argument by the State, had been closed, and the leading counsel had left town. There is no merit in these matters. There is nothing to show that the remaining counsel were not fully capable of cross-examining the witness about his signature. They had ample opportunity offered them, either to examine the witness or introduce testimony, or to be heard again in an argument before the jury.

Another bill recites that the jury were permitted to carry the tax rendition with them, when they went out to deliberate upon their verdict, and the piece of paper containing the signature of Jack Gatlin. This was objected to because it was not such evidence as they were entitled to carry with them into the jury room. The court overruled this and this same bill is qualified as follows: ''The tax rendition above referred to was introduced in evidence, the paper with the signature written, and these papers were exhibited to the jury and carried by them to the jury room in their deliberations.'' As the matter is presented, we are of opinion there is no error shown. What the purpose of this testimony was, is not clear, nor does the bill of exceptions undertake to show how it could have been injurious, or even the effect of the testimony one way or the other or what effect it could have by being carried into the jury room. In fact, the bill is so indefinite that we are unable to see how it could have effected the case, especially injuriously to appellant's cause.

Finding no reversible error in the record, the judgment is ordered to be affirmed.

*Affirmed.*