### J. W. POWERS v. THE STATE.

No. 2864. Decided December 23, 1913.

Rehearing denied January 21, 1914.

**1.—Burglary—Sufficiency of the Evidence.**

Where, upon trial of burglary, the evidence sustained the conviction, there was no error.

**2.—Same—Variance—Ownership—Possession.**

Where the indictment alleged that the defendant burglarized a house belonging to M, and the evidence showed that he had possession, charge and control of the said house and stolen property, it made no difference whether the real owner was a corporation, and another person had also possession with him. Following McAnnally v. State, 57 S. W. Rep., 832, and other cases.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. L. Crawford.

Appeal from a conviction of burglary; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Ed B. Freeman* and *A. S. Baskett,* for appellant.—On question of variance in ownership: White v. State, 24 Texas Crim. App., 231; Thurmond v. State, 30 id., 539; Robinson v. State, 22 id., 690.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of ownership: Clark v. State, 26 Texas Crim. App., 486; Coates v. State, 31 Texas Crim. Rep., 257; Tidwell v. State, 45 S. W. Rep., 1016.

PRENDERGAST, PRESIDING JUDGE.—Appellant appeals from a conviction for burglary with the lowest penalty affixed.

Appellant raises but two questions in the case. First, he claims the evidence is insufficient to support a conviction. Second, that there is a fatal variance between the allegations and proof of the ownership and possession of the burglarized house.

The uncontradicted evidence clearly establishes that on the night of March 4, 1913, a storehouse was burglarized by breaking into one of the windows and at the time certain property was stolen therefrom. Among other articles then stolen were some kodaks and a manicure or toilet set.

The indictment alleged that the house burglarized was owned and occupied by T. Q. Martin and that the property stolen was his property.

As to the first question: Said Martin testified that his place of business was entered on the night of March 4, 1913; that he was in charge and control of the burglarized store jointly with O. L. Anderson; that he was one of the joint managers of the Owl Drug Store and he and Anderson together had charge of this particular store. He handled the financial end of it and Anderson the sales end of it; that he presumed Anderson would be the manager. On cross-examination he testified that the Owl Drug Store is a corporation and that he and said Anderson owned the stock; that he was the treasurer and bookkeeper and looked after the collections and attended to everything, except the actual sales; that he did the buying; that Anderson is what you would call the floor manager and had charge of the help and the opening and closing of the store and the sale of the goods. "I keep a record of the stock in the store in order to be able to buy stock, and have charge of the kodak department—look after that as one of my duties. I do not look after the actual retail sales of them or do any of the actual selling myself"; that said Anderson had charge of the sales department and does the selling himself and my salesman in the store, a Mr. Daniels; that Mr. Daniels at that time looked after the kodaks possibly more than any other man, but that they all had the sale of them; that they recovered this stolen kodak and the said manicure or toilet set some six weeks after the burglary.

Said Anderson testified he was one of the partners in the Owl Drug Store, the burglarized store. On cross-examination, that the store belonged to him and Martin; that it is a partnership, but incorporated. as the Owl Drug Store; that there were really three owners of it,—himself, and Mr. and Mrs. Martin; that they bought the store from Mr. Marvin when it was the Owl Drug Store; that Martin and he both had charge of the store; that he had charge of the store department and Mr. Martin of the stock; that he in a way looked after the employment of help, but that Martin and he always kind of did that between themselves; that Martin in a way had to do with the sales department and attended to the financial part of the business; that both watched that more or less, he, Martin, more than the witness; that it was not Martin's store individually, and that Martin did not have the exclusive control and management of it at the time; that Martin rented the place and paid the rent.

The court, at appellant's request, gave his special charge No. 3 as follows:

"The indictment in this case alleges that the defendant burglarized a house belonging to T. Q. Martin, and the proof shows that the alleged burglarized house belonged to the Owl Drug Company, a corporation. I therefore instruct you that in order to sustain the allegation of ownership in the said T. Q. Martin, you must believe from the evidence beyond a reasonable doubt, that he, said T. Q. Martin, was in the exercise of the actual control, care, and management of said house, and unless you so believe beyond a reasonable doubt you will acquit the defendant." The court gave a correct charge, including a charge on circumstantial evidence, to which there is no objection. Our statute, article 457, Code Criminal Procedure, is: "Where one person owns the property, and another person has the possession, charge or control of the same, the ownership thereof may be alleged in either. Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them." It will be noted that the statute says "possession, charge, *or* control." Either is sufficient,—possession, charge, or control,—in the language of the statute. It is not necessary that the alleged owner shall have the possession, charge and control, as required by the charge requested and given, copied above.

The evidence above stated was amply sufficient to show that said Martin had the possession, charge and control of the burglarized house and the stolen property; that Anderson also had such possession, charge and control and that the corporation, the Owl Drug Company, was the real owner, would make no difference whatever. At most, the testimony would show that both Martin and Anderson had possession, charge, and control. So that the ownership was properly alleged and proven to be in said Martin. Ricks v. State, 56 S. W. Rep., 928; McAnally v. State, 57 S. W. Rep., 832; Coates v. State, 31 Texas Crim. Rep., 257; Duncan v. State, 49 Texas Crim. Rep., 150; Bailey v. State, 50 Texas Crim. Rep.,

398; Cogshall v. State, 58 S. W. Rep., 1011; Scoville v. State, 81 S. W. Rep., 717; Tidwell v. State, 45 S. W. Rep., 1015.

On the other question the evidence shows that on the day appellant was arrested some two months after the burglary that Joe Cook, appellant's father-in-law, 'phoned the officers to come up to where appellant lived. The officer receiving this call testified that the party who 'phoned, said he knew where some of the goods stolen from said store at the time of the burglary were and that he, in response to said call, went to appellant's house or room and when he got there he went in and arrested appellant and found some of the stolen stuff there in appellant's house; that he found this stolen kodak and a dressing or manicure set also, stolen from said house. Appellant's father-in-law, said Cook, also testified that he was present when the officer went up to appellant's house or room and was there when they discovered this stolen kodak and manicure set; that it was in appellant's room which he, appellant, had rented and that this property was discovered therein. Appellant made no explanation whatever of his possession of said stolen property. After appellant was arrested, the officers sent him off to jail, and after he was sent off, he, the officer, called upon appellant's wife there in the room where said stolen property had been found, to give him the kodak and manicure set, which she did, getting it out of the drawer of a dresser at the time. All this occurred in the City of Dallas, where appellant lived and where the burglarized drug store was situated. As stated above, the evidence clearly established that said drug store was burglarized at night and this kodak and toilet or manicure set found in appellant's possession and in his room was identified and shown to be a part of the stolen property from said drug store at the time it was burglarized. As stated above, the court correctly charged the jury, and, among other things, gave a correct charge on circumstantial evidence, to none of which is there any objection. In addition to the special charge above quoted, at appellant's instance, the court gave also, at his instance, these two special charges:

No. 5: "The possession of stolen property is never an evidence of guilt unless such possession is recent, personal and involves a distinct and conscious assertion of claim by the possessor; and even where the possession is recent and personal, the person in possession must fail to explain his possession, when called upon or where the facts are such as to call for an explanation before the same shall be taken as a circumstance against him."

No. 6: "The burden of proving guilt is on the State throughout, and never shifts from the State to the defendant, and no presumption of guilt is to be indulged in by the jury, because the defendant fails to adduce any testimony, but in order to warrant a conviction you must believe from the evidence of the State beyond a reasonable doubt that the defendant is guilty."

Under the many decisions of this court the evidence was sufficient to sustain the conviction. Moray v. State, 65 Texas Crim. Rep., 504, 145 S.

W. Rep., 592; Williams v. State, 64 Texas Crim. Rep., 494, 142 S. W. Rep., 878; Hawthorn v. State, 62 Texas Crim. Rep., 114; Favro v. State, 39 Texas Crim. Rep., 452; Richardson v. State, 42 S. W. Rep., 996; Rust v. State, 31 Texas Crim. Rep., 75.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge, absent.

[Rehearing denied January 21, 1914.—Reporter.]